# RUBINSTEIN & COROZZO, LLP
### COUNSELORS AT LAW

260 MADISON AVENUE, 22ND FLOOR
NEW YORK, N.Y. 10016
TELEPHONE (212) 545-8777; FAX (917) 722-8206
INFO@RUBCORLAW.COM

RONALD RUBINSTEIN
JOSEPH R. COROZZO

ANGELA D. LIPSMAN (NY; NJ)

Of Counsel:
MARSHALL A. MINTZ

February 27, 2026

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Liverano
25 CR 384 (BMC)

Dear Judge Cogan,

We represent Defendant Mark Liverano ("Liverano"). We write to respectfully request that the Court: 1. Order the Government to produce to defense counsel the materials underlying the Government's Motion to Disqualify this law firm, ECF # 19, including but not limited to the recordings the Government cites in their Motion, any transcripts they have provided to the Court and the undisclosed identity of the former client they refer to in their Motion; and 2. Either Order the Government's *Ex Parte* submission also be produced to defense counsel or, in the alternative, Strike the Government's *Ex Parte* submission.

As we will discuss, producing the requested evidence and information are required by the Due Process Clause, given the deprivation of liberty at stake, and are necessary, *inter alia*, to permit the defendant to make an informed decision about whether to proceed with counsel of his choice, to protect his constitutional right to counsel of his choice, and to enable counsel to intelligently respond to the Government's Motion and to fulfill our obligations under the New York State Rules of Professional Conduct.

**DISCUSSION**

I. The Sixth Amendment Right to Counsel.

The Sixth Amendment of the U.S. Constitution protects a defendant's right to the effective Assistance of Counsel. While this does not confer an "absolute right to be represented by counsel of their choice, the Second Circuit has 'consistently recognized that the right of an accused who retains an attorney to be represented by that attorney is 'a right of constitutional

1

RUBINSTEIN & COROZZO, LLP

dimension.' Accordingly, a defendant's 'choice of counsel should not be unnecessarily obstructed by the court.'" *United States v. Stein*, 410 F. Supp. 2d 316, 323 (S.D.N.Y. 2006) (quoting *United States v. Perez*, 325 F.3d 115, 124 [2d Cir. 2003] and *United States v. Cunningham*, 672 F.2d 1064, 1070 [2d Cir. 1982]) (footnotes omitted).

Where the Government alleges that defendant's chosen counsel has a conflict of interest, the district court must determine whether "'defense counsel has a genuine conflict,'" and, if so, "'whether the conflict is so severe as to require the attorney's disqualification or whether it is a lesser conflict that can be waived through a *Curcio* hearing.'" *United States v. Sterritt*, 2021 U.S. Dist. LEXIS 177598, *17; 2021 WL 4237112 (E.D.N.Y. Sept. 17, 2021) (quoting *United States v. Arrington*, 941 F.3d 24, 40 [2d Cir. 2019]).

II. The Government's Withholding of Information Prevents Either Mr. Liverano Or the Former Client From Giving Informed Consent.

One of the reasons the Government proffers for disqualifying the law firm from representing Mr. Liverano in the case at bar is due to Mr. Corozzo having previously represented an unspecified witness.

"In most cases… the defendant 'may make a knowing and intelligent waiver of his right to a conflict-free lawyer if he desires to continue the representation,'" *Steritt,* 2021 U.S. Dist. LEXIS 177598, *17; 2021 WL 4237112 (quoting *Arrington*, 941 F.3d 24, 40, which in turn was quoting *United States v. Cain*, 671 F.3d 271, 293 [2d Cir. 2012]).

"'Where the right to counsel of one's choice conflicts with the right to an attorney of undivided loyalty, the determination of which right is to take precedence must generally be left to the defendant, who may make a knowing and intelligent waiver of his right to a conflict-free lawyer if he desires to continue the representation,'" 2021 U.S. Dist. LEXIS 177598, *37 (quoting *Cain*, 671 F.3d at 293).

Mr. Liverano desires to continue that representation here. According to the Government's calculation, Mr. Liverano faces a statutory maximum of 125 years in prison if convicted of the charges at trial in the case at bar.[1] The Government describes Mr. Liverano's relationship with his chosen counsel as "close,"[2] but has omitted that the defendant has a long-standing attorney-client relationship with Mr. Corozzo spanning over a decade.

A *Curcio* hearing would be "to determine whether defendant's waiver is knowing and intelligent." *United States v. Pizzonia*, 415 F. Supp.2d 168, 175 – 176. (E.D.N.Y. 2006).

But the Government has left Mr. Liverano in a quandary: *how* can he make a knowing and intelligent waiver of his right to a conflict-free lawyer if the Government is withholding the evidence underlying their Disqualification Motion, including even the identity of the former client that the Government posits is the subject of a conflict of interest?

---

[1] Government's Opp. to Liverano Bail App., Doc. # 16, p. 10.
[2] Government's Disqualification Motion, fn. 2.

2

RUBINSTEIN & COROZZO, LLP

The New York Rules of Professional Responsibility indicate that if representing a former client would pose a conflict of interest due to representing a current client "in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client," then the former client would have to give **informed** consent to waiving the conflict of interest. N.Y. Rule of Professional Conduct 1.9(a) (Duties to Former Clients).

Likewise, the rules require the current client, Mr. Liverano, to give **informed consent** in order to waive any potential or actual conflict of interest. N.Y. Rule of Professional Conduct 1.7(b)(4) (Conflict of Interest: Current Clients).

By withholding the name of the former client at issue, and withholding the underlying evidence, the Government is preventing us from fulfilling our obligations under the New York Rules of Professional Conduct. The Government is preventing the possibility of either Mr. Liverano or the former client providing *informed* consent to a conflict waiver herein, as well as preventing defense counsel from assessing in the first instance whether or not the conflict is waivable pursuant to the New York Rules of Professional Conduct.

We cannot fathom how the Court can hold a *Curcio* hearing for Mr. Liverano and ask him if he gives his **informed** consent to a waiver of one or more alleged conflicts of interest while simultaneously withholding the evidence and information underlying the Government's Disqualification Motion. The defendant needs to be able to understand the alleged conflict(s) and the potential consequences of waiving same in order to make an informed decision. The Second Circuit is "'more concerned with whether the defendant appreciated his predicament and made a properly informed choice than… with whether the trial judge recited any particular litany of questions.'" *Arrington*, 941 F.3d 24, 43 (quoting *United States v. Jenkins*, 943 F.2d 167, 176 [2d Cir. 1991]).

Here, where the Government alleges that Mr. Corozzo has conflicts of interest due to the representation of a former client and due to recordings of the defendant allegedly discussing Mr. Corozzo, Mr. Liverano cannot give his informed consent without knowing who the former client at issue is and without the disclosure of the audio recordings at issue.

None of the cases cited by the Government involve a case in which the Government was permitted to conceal the identity of the former client on a motion to disqualify. We are unaware of any precedent that would allow the Government to do so.

III. The Government's Withholding of Information
Prevents Counsel from Taking Steps to Mitigate Conflict.

The Second Circuit has held that "conflicts, such as an attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable," *United States v. Perez*, 325 F.3d 115, 127 (2d Cir. 2003) (citing *United States v. Fulton*, 5 F.3d 605, 613 [2d Cir. 1993]). "[T]he Second Circuit has considered a number of different factors in determining whether a conflict can be waived including, among other things … whether disqualifying the defendant's chosen counsel would create 'real prejudice' to the defendant based

on the length of the representation and/or counsel's familiarity with the case... whether, if the conflict concerns the interest of another client, the attorney's relationship with the other client is continuing or has been terminated... whether any other current or former client affected by the conflict has initiated or joined in the motion to disqualify defendant's chosen counsel, and... the availability of measures that might limit the dangers posed by the conflict, such as restricting an attorney's cross-examination of a former client," *United States v. Stein*, 410 F. Supp. 2d 316, 328 (S.D.N.Y. 2006) (footnotes omitted). See also *Sterritt*, 2021 U.S. Dist. LEXIS 177598, *32; 2021 WL 4237112 (quoting *United States v. Oberoi*, 331 F.3d 44, 50 [2d Cir. 2003]) ("'[o]ur cases... support allowing waiver of the conflict that arises when an attorney must cross-examine a former client in order to effectively represent a current client'").

"[M]easures that might limit the dangers posed by the conflict,"[3] include, for example, retaining co-counsel, who does not have a conflict of interest and is not privy to any privileged information or communications from the representation of the former client, to cross-examine the witness if he testifies[4] or for the defendant to agree to "abandon a particular defense or line of questioning," *Perez*, 325 F.3d 127.

Here, the Government's withholding the former client's identity not only prevents Mr. Liverano and the former client from giving informed consent, but also prevents us from taking measures to mitigate the alleged conflict of interest, such as retaining co-counsel (who has not represented the unspecified former client, does not have confidential knowledge of the witness, and has no conflict of interest), for the purpose of cross-examining the witness should he testify.

IV. The Government's Withholding of Information Violates the Due Process Clause and Prevents the Defendant from Assessing Whether The Government Has Met Their Heavy Burden.

"'Because courts must guard against the tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny.'" *United States v. Schulte*, 2020 U.S. Dist. LEXIS 19486, *13 (S.D.N.Y. Feb. 3, 2020) (citing *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 [2d Cir. 2009]).

The burden of proving that defense counsel should be disqualified rests with the Government, and is a "heavy burden." *Schulte*, 2020 U.S. Dist. LEXIS 19486, *13 (citing *Murray*, 583 F.3d at 178); *Reyes v. Golden Krust Caribbean Bakery, Inc.*, 15 CV 7127 (DF), 2016 U.S. Dist. LEXIS 121623, *24 (S.D.N.Y. Sept. 1, 2016) (quoting *Simply Fit of N. Am., Inc. v. Poyner*, 579 F. Supp. 2d 371, 384 [E.D.N.Y. 2008]; other citation omitted).

It is a heavy burden both because of the significant risk of parties bringing disqualification motions to gain tactical advantages over their adversaries, and because it is "a significant deprivation" to deny an individual of "counsel of his choice," *United States v. Napoli*, 2010 U.S. Dist. LEXIS 41219, *12; 2010 WL 1687669 (E.D.N.Y. April 27, 2010) (in order to

---

[3] *Stein*, 410 F. Supp. 2d at 328 (citing *United States v. Cunnigham*, 672 F.2d 1064, 1073 [2d Cir. 1982]).
[4] *United States v. Sterritt*, 2021 U.S. Dist. LEXIS 177598, *15; 2021 WL 4237112 (E.D.N.Y. September 17, 2021); *United States v. Rahman*, 837 F. Supp. 64, 71 (S.D.N.Y. 1993).

RUBINSTEIN & COROZZO, LLP

limit the scope of that significant deprivation, while the court disqualified counsel from representing that defendant at trial, the court permitted Mr. Corozzo to remain on the case and continue to represent the defendant in non-trial proceedings).

Despite the high stakes Mr. Liverano faces in the case at bar and his long-standing attorney-client relationship with Mr. Corozzo, the Government has asked the Court to infringe upon his constitutional right to counsel of his choice *without giving the defense the opportunity to assess and challenge the evidence and the arguments that the Government has submitted ex parte*.

Mr. Liverano cannot intelligently assess whether or not the Government has even begun to satisfy their heavy burden in the absence of the evidence that the Government relies upon in their motion.

The Court may or may not be aware that this is not the first instance in which the Government claims to have audio recordings suggesting that Mr. Corozzo is himself involved in organized crime. The Government made the same argument[5] when they moved to disqualify him in *Pizzonia*, 415 F. Supp.2d 168.

Notably, and crucially, however, the audio recordings at issue in *Pizzonia* were not submitted *ex parte*. Rather, they were shared with defense counsel, who was able to successfully refute the Government's interpretation of the recordings. Accordingly, the Hon. Jack Weinstein, who listened to the recordings and had the benefit of both parties' conflicting interpretations of same, was able to reject the Government's meritless argument that the recordings indicated Mr. Corozzo was involved in organized crime.

In fact, while the Government has cited to other cases in which the Government successfully moved to disqualify Mr. Corozzo as defense counsel, the Government cannot cite to a single case in which the evidence underlying the motion to disqualify was ever withheld from defense counsel and submitted *ex parte*. There is NO precedent for doing so. Even in *United States v. Gogic*, 22 CR 493 (JMA), in which the Government submitted an *ex parte* filing, the Government furnished defense counsel with all of the materials the Government relied upon in their motion to disqualify. (And the Government's *ex parte* memorandum in *Gogic* is the subject of a pending, unopposed cross-motion to strike the *ex parte* filing or, in the alternative, to provide the *ex parte* filing to defense counsel. Cross Motion to Strike, *Gogic*, 22 CR 493 [JMA], Doc. # 196.)

---

[5] Although it is not actually clear from the Government's Disqualification Motion whether or not the Government believes "that Mr. Corozzo himself is an inducted member of the Gambino crime family," Motion p. 12. At the status conference in which they stated their intent to bring the motion, the Government disclaimed this position, saying "That's not what we are saying. That's what the defendant believes," 2/10/26 Status Conference Tr., p. 7, L. 15 – 16. In their motion, however, the Government appears to be leaning into the defendant's purported belief and presenting same as uncontested fact—regardless of the lack of any corroboration.

5

RUBINSTEIN & COROZZO, LLP

New York Rule of Professional Conduct 3.5(a)(2) prohibits *ex parte* communications, including but not limited to the *ex parte* submission of filings and evidence.[6] See also *Power Authority of New York v. Federal Energy Regulatory Com.*, 743 F.2d 93, 110 (2d Cir. 1984).

There is a reason that the New York Rules of Professional Conduct and the Due Process Clause of the U.S. Constitution generally prohibit *ex parte* communications with the Court, and it is because "due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions **but to correct** or contradict arguments or evidence offered by the other," *United States v. Abuhambra*, 389 F.3d 309, (2d Cir. 2004) (citing *Joint Anti-Fascist Refugee Coom. v. McGrath*, 341 U.S. 123, 171, n. 17 [1951] [Frankfurter, J., concurring]) (emphasis added). Cf. *Power Authority of New York*, 743 F.2d 93, 110 (in determining whether an *ex parte* communication warrants recusal, "one must look to the nature of the communications and particularly to whether they contain factual matter or other information outside of the record, which the parties did not have an opportunity to rebut") (citations omitted).

In denouncing as unconstitutional kangaroo court procedures in which, *inter alia*, there was *ex parte* communication, the U.S. Supreme Court stated that, "the procedural rules which have been fashioned from the generality of due process are our best instruments for the distillation and evaluation of essential facts from the conflicting welter of data that life and our adversary methods present. It is these instruments of due process which enhance the possibility that **truth will emerge from the confrontation of opposing versions** and conflicting data. 'Procedure is to law what 'scientific method' is to science.'" *In re Gault*, 387 U.S. 1, 21 (1967) (citation omitted) (emphasis added).

Here, the need to correct the U.S. Attorney's Office's interpretation of evidence was demonstrated recently in *United States v. Persico*, 21 CR 466 (HG). Mr. Persico was arraigned just last month on allegations of Violating his Supervised Release. By reviewing the video recordings provided by the Government, we were able to prove that the Assistant United States Attorney in that matter—who is the same Assistant United States Attorney in the case at bar—had misidentified multiple individuals in the recordings, leading, *inter alia*, to the padding of the VOSR charges against Mr. Persico with two charges that were completely unfounded and ultimately dismissed. See Defendant's VOSR Submission – *Persico*, 21 CR 466, Doc. # 749, and Response to Gov. - *Persico*, 21 CR 466, Doc. # 753 (both setting forth the Government's erroneous interpretations of recordings). (Both submissions were filed under seal out of an abundance of caution, with redacted versions publicly filed. As they present recent, clear examples of the Assistant United States Attorney in the case at bar having presented erroneous interpretations of recordings in another case in this district, illustrating the importance of defense counsel being able to review and challenge the Government's evidence, we would be happy to provide the Court with the un-redacted submissions.)

---

[6] With exceptions that are not applicable here. For instance, the narrow exception in Fed. R. Crim. Pro. 16 which permits the filing of an *ex parte* motion for a ***Protective Order*** has never been extended to permitting the *ex parte* filing of a memorandum or evidence in support of a motion to ***disqualify***.

6

RUBINSTEIN & COROZZO, LLP

If Assistant United States Attorney Lash had been permitted to submit the video recordings in *Persico ex parte*, as she is initially doing herein, then we would have had absolutely no way of proving that the Government's interpretation of the recordings was wrong.

If the Government is truly concerned about ensuring "'that legal proceedings appear fair to all who observe them,'"[7] then they should stop to consider the ramifications of their behavior on the reputations of the judiciary and the criminal justice system. To wit: would the public consider legal proceedings fair in which the accused is prevented from retaining the counsel of his choice based solely on evidence which is neither shared with him nor his counsel, and which he thus has no means whatsoever of rebutting?[8]

Fairness and the Due Process Clause demand that the defense be given an opportunity to put the Government's interpretation of their evidence to the test before depriving a defendant in a criminal case of his Sixth Amendment right to counsel of his choosing. The need to observe this Due Process safeguard is, if anything, heightened here, where that defendant faces being deprived of his liberty for up to 125 years if convicted.

The Government argues that defense counsel is a subject of investigation,[9] is allegedly implicated in criminal activity in recordings by our client, and should be disqualified, *inter alia*, because they allege we may act to curry favor with the Government out of fear of Mr. Corozzo being implicated in wrong doing.

While we need to listen to the recordings the Government refers to in order to intelligently respond to the Government's arguments, and while there is never a guarantee of not being arrested without probable cause, we remain utterly unconcerned by the Government's suggestion that Mr. Corozzo would be implicated in any wrong doing. We assure the Court that there is nothing that the Government can say or do that would keep us from representing our client zealously within the bounds of the law. Far from making us want to curry favor with the Government, the Government's baseless accusations simply strengthen our resolve to do our utmost to metaphorically mop the floor with the Government in court.

---

[7] Motion to Disqualify p. 6 (quoting *Wheat v. United States*, 486 U.S. 153, 160 (1988).
[8] We are reminded of the play "Not Nobody," by Brian Dykstra, currently playing at 59E59 Theaters, in which law enforcement's expert misinterprets a video recording in a manner that erroneously implicated a Good Samaritan in criminal activity, which was then used by law enforcement and the District Attorney's Office in an attempt to intimidate the Good Samaritan into cooperating with their investigation. The play highlights the importance of defense counsel having an opportunity to review the prosecution's evidence and to rebut the prosecution's interpretation of same. The play warns of the precarious nature of the public's respect for our criminal justice system, and how easily law enforcement and prosecutors can undermine that respect through unchecked overzealousness.
[9] Though the investigation arising out of *United States v. Gogic*, 22 CR 493 (JMA), which the Government uses to pad their Motion to Disqualify herein, is clearly irrelevant as it is not even slightly, let alone "sufficiently related to the charged crimes," *United States v. Fulton*, 5 F.3d 605, 611 (2d Cir. 1993).

RUBINSTEIN & COROZZO, LLP

Finally, the Government has neither identified an applicable exception to the general rule prohibiting *ex parte* communications,[10] nor demonstrated why the underlying evidence, their *ex parte* memorandum, and the identity of the former client at issue would need to be concealed from not only the defendant but also from defense counsel. By the Government's own admission, the recordings at issue are of the defendant's own conversations, and Mr. Corozzo owes a duty of loyalty to his former client as well as to the defendant. Assuming *arguendo* that the materials and information need some level of protection, the Government has proffered no reason in their motion that a standard Protective Order would not suffice.

## CONCLUSION

Wherefore, in order to avoid unnecessary deprivations of the Defendant's rights under the Due Process Clause and the Sixth Amendment, to enable the Defendant to be able to give informed consent and knowingly waive any alleged conflicts of interest, and to enable counsel to fulfill our obligations under the New York Rules of Professional Conduct,, as well as to intelligently respond to the Government's motion, and to protect the reputation of the judiciary and the criminal justice system, we respectfully cross-move for an Order:

1. That the Government produce to defense counsel the materials underlying the Government's Motion to Disqualify this law firm, ECF # 19, including but not limited to the audio recordings, any transcripts provided to the Court, and the identity of the former client the Government refers to; and

2. That the Government's *Ex Parte* submission also be produced to defense counsel or, in the alternative, that the Court strike the Government's *Ex Parte* submission in its entirety.

Respectfully submitted,

Angela D. Lipsman, Esq.
Joseph R. Corozzo, Esq.

cc:   Assistant United States Attorney Devon Lash

---

[10] New York Rule of Professional Conduct 3.5(a).

8